**KUNKEL, Plaintiff-Appellant, v CINCINNATI STREET RY. CO., Defendant-Appellee.**

Ohio Appeals, First District, Hamilton County.

No. 6920. Decided March 8, 1948.

Messrs. Marble & Vordenberg, Cincinnati, for plaintiff-appellant.

Leo J. Brumleve, Jr., Cincinnati, for defendant-appellee.

**OPINION**

By ROSS, J.:

This is an appeal on questions of law from a judgment of the Court of Common Pleas of Hamilton County in favor of the defendant, entered in conformity to a verdict.

The action was instituted to recover damages for personal injuries suffered by plaintiff when a truck driven by him collided with a street car operated by an employee of the defendant.

The plaintiff alleges in his amended petition that he was backing the truck out of a building maintained by defendant as the upper terminus of an inclined plane when one of the street cars of defendant on its way into such building struck the truck and caused the injuries of which complaint is made.

The plaintiff charges that defendant was negligent in that it operated such street car at such time and place at a speed greater than was reasonable and proper, and which would permit stopping such street car in the assured clear distance ahead, without keeping a proper lookout, failed to give any warning of its approach, "all in violation of the laws of Ohio and the ordinances of the City of Cincinnati then in effect, and particularly of ordinance No. 74-57, which is as follows:"

Then the plaintiff quoted certain ordinances of such City applicable to the operation of street cars upon the "streets and highways" of the City.

It is further alleged that such negligence of the defendant was the proximate cause of injuries to plaintiff, which are detailed at length.

In the answer of defendant it is admitted the collision occurred "at the Mt. Adams incline of said defendant." Otherwise, the answer is a general denial.

Plaintiff advances as his first assignment of error that the verdict and judgment are manifestly against the weight of the evidence. There is evidence that the plaintiff backed the truck into the street car, which had stopped, and also evidence that the car struck the truck. There is some evidence that the defendant was negligent and also that the plaintiff was guilty of contributory negligence.

In an appeal upon questions of law, this Court cannot retry the facts or render an independent judgment thereon. **Bishop v East Ohio Gas Co., 143 Oh St, 541.** Nor is it justified in reversing a judgment upon the weight of the evidence unless it "be fully and clearly satisfied from an examination of all the evidence and of the whole record, that the judgment is in fact unsupported by, or against the manifest weight of, the evidence. And the court will not be thus satisfied unless there projects from the record some fact or circumstance indicating that the jury lost its way and went in the wrong direction in reaching its verdict resulting in error and injustice shocking to the senses and to the conscience of the court, and clearly showing that the jury misapprehended the facts or were influenced by sympathy, bias, prejudice, wilful disregard of duty, perversity, corruption or other improper motives. In other words there must be impressed upon the evidence a status which shows that the conclusion of the jury is unreasonable, improbable and illogical to such a degree that it is possible to say that the testimony affords no reasonable foundation for the verdict or findings, or that unbiased, unprejudiced minds could not, from the evidence, have reached the con-

clusion which was reached by the jury or the trial court."
2 O. Jur., pp. 755, et seq., sec. 663.

It cannot be said that the record justifies a reversal when these tests are applied to that privilege.

The second assignment of error deals with the action of the trial court in excluding evidence through which plaintiff sought to impeach witnesses for the defendant. In one instance the plaintiff sought to show that a witness for the defendant had stated that she could not testify because she had a relative employed by defendant. She denied she had such relative and that she made such statement. Her statements were averred to have been made over the telephone.

Certain requisites attach to the privilege of impeachment. These are well stated in **42 O Jur., "Witnesses" Section 398, p. 408, and Section 400, p. 411.**

"To lay a proper foundation for the impeaching evidence, the witness must be asked as to his having made the alleged contradictory statement at a particular time and place and to a particular person. The question whether he has ever said so at any time or place is not sufficient. It is not sufficient merely to direct the witness's attention to the place, date, and persons involved, unless he is also asked, by a question using the substance of his own language, whether he said that which is intended to be proved. Generally, there is an insufficient foundation laid where the examining counsel fails to ask concerning a definite statement, fails to mention the place, and leaves a wide scope as to the time when the statement was supposed to have been made."

The matter involved in the impeachment must relate directly to an issue involved or tend to show bias and prejudice on the part of the witness. (Id., Section 411, p. 420.) See, also, **O'Hara v Cincinnatti Street Ry. Co., 68 Oh Ap, 7.**

The foundation claimed by plaintiff to have been laid for impeachment of this witness appears from the record to be as follows:

"Q. Now Miss Cassity with whom do you live?
"A. With whom do I live?
"Q. Yes.
"A. My sister.
"Q. Your sister. Who is the relative of yours that is connected with the Street Railway Company?
"A. A relative of mine?

"Q. Yes.

"A. I don't have a relative connected with the Street Railway Company.

"Q. You don't. Didn't you tell. Mr. Kunkel that you had a relative with the Street Railway Company?

"A. I don't have a relative connected with the Street Railway Company.

"Q. Did you at that time?

"A. I did not at that time.

"Q. How?

"A. No, I don't have.

"Q. Now didn't you tell Mr. Kunkel that?

"A. I wish I did have. No I don't have a relative.

"Q. Didn't you tell him you had a relative with the Street Railway Company and you couldn't let them down?

"A JUROR: We can't hear.

"A. I didn't tell Mr. Kunkel that I had a relative with the Cincinnati Street Railway Company and I couldn't let them down. I did not tell him that.

"Q. You didn't say that? A. No."

It does not clearly appear from the record what was meant by "that time". This examination was admitted without objection on the part of the defendant.

From the record it appears that the plaintiff sought to contradict the statements of the witness in the following manner:

"Q. Mr. Kunkel, I want to ask you also if you got in touch with the witness Miss Cassity?

"A. I did.

"Q. And did you discuss with her whether or not she had seen this accident?

"MR. BRUMLEVE: That is improper, if your Honor please, and I object to it.

"THE COURT: If you have not finished your question, the rule is you are permitted to finish the question and if it is wrong as to form the objection will be sustained. It will be sustained, after you have finished it.

"Q. Mr. Kunkel, on the stand yesterday I asked Miss Cassity whether or not she made the statement to you that she was related to someone in the employ of the Cincinnati Street Railway Company and therefore she would not wish to testify for you. You may state whether or not she made that statement.

"MR. BRUMLEVE: And I object unless the time and the place is mentioned, if your Honor please.

"THE COURT: The objection is well taken.

"Q. Mr. Kunkel, when if at all did you have a conversation with her?

"A. Last fall, around the same time I was talking to Mr. Allen.

"Q. Do you remember what month that was in?

"A. I think around November.

"Q. Where did this conversation take place?

"A. In my home.

"Q. What?

"A. In my home.

"Q. Well, was she in your home?

"A. No. I was talking to her over the telephone.

"Q. Oh, over the telephone, I see. I will ask you whether or not she made the statement to you that she had a relative with the Street Railway Company and therefore she could not testify for you?

"MR. BRUMLEVE: I object.

"THE COURT: I will sustain the objection.

"Q. In this telephone conversation did you ask to whom you were speaking?

"MR. BRUMLEVE: I object.

"THE COURT: Objection sustained.

"Q. What conversation did you have or who did you ask for when you called?

"MR. BRUMLEVE: I object.

"THE COURT: Sustained.

"Q. Do you remember what telephone number you called?

"A. No, I do not.

"Q. Where did you obtain the number?

"MR. BRUMLEVE: I object to that, if your Honor please.

"THE COURT: Sustained.

"MR. MARBLE: Note my exception and I proffer as to the question whether or not she made the statement with respect to her being related to an employee of the Street Railway Company, she said that she was related to an employee and therefore could not testify for him. That is all."

It cannot be said that the trial court abused its discretion or committed error in strictly enforcing the rules applicable to impeachment and in refusing such evidence tending to impeach.

In another instance the motorman was on the stand when the following occurred:

"Q. As a matter of fact there is a point there before you get to Monastery Street where you can look in the barn, isn't there?

"A. (No answer).

"Q. Don't you know?

"A. I don't remember.

"Q. Didn't you tell me that is the point where you looked and saw the car standing beside the track?

"A. No, I didn't.

"Q. And didn't you tell me that you then proceeded and you stopped at Monastery Street and you picked up a passenger and there is this distance of about four hundred feet where you travel where you cannot see the barn at all. That from that time on you looked down at your switches and never looked up?

"A. That is not correct.

"Q. Didn't you tell me that this whole thing happened because you thought you were following the directions of the company and watching all three switches as you went along?

"A. I don't remember saying it.

"Q. And didn't you tell both Mr. Kunkel and myself that it was your fault?

"MR BRUMLEVE: I object.

"A. No, I did not.

"MR. BRUMLEVE: I object.

"Q. You deny that?

"A. No, I did not.

"MR. BRUMLEVE: I would like to see Mr. Marble become a witness in his own case. Did you Honor sustain the objection to the question.

"THE COURT: Objection sustained as to the form of the question."

The attempt to impeach is found in the record where the plaintiff attempted to contradict the witness as follows:

"Q. Mr. Kunkel, did you at any time since this accident get in touch with Luther Allen?

"A. Yes, I did.

"Q. The motorman?

"A. Yes, I did.

"Q. Do you remember about when that was and where you saw him?

"A. That was last fall, I can't remember the month, but I was in his house.

"Q. And what was the purpose?

"MR BRUMLEVE: I object to the purpose.

"THE COURT: Sustained.

"Q. Did you have any conversation with him?

"A. Yes sir, I did.

"Q. Regarding the accident?

"A. I did.

"Q. And what did he say?

"MR. BRUMLEVE: I object if your Honor please.

"THE COURT: Sustained.

"MR. MARBLE: Having in mind his testimony yesterday that I asked in the question if he didn't make certain statements to Mr. Kunkel?

"THE COURT: I am assuming that the objection here is as to the form?

"MR. BRUMLEVE: That is right.

"MR. MARBLE: I merely asked him if he had a conversation with him and what he said.

"THE COURT: That is not a prescribed form for impeachment under the objection and it will be sustained.

"Q. I will ask you whether or not in a conversation with him anything was said by him as to how or what caused this accident?

"A. Well,——

"MR. BRUMLEVE: I object again, if the Court please.

"THE COURT: Sustained.

"Q. Did you inquire of him as to what he did?

"MR BRUMLEVE: I object, if your Honor, please.

"THE COURT: Sustained.

"Q. And what did he say?

"MR. BRUMLEVE: I object to that too.

"THE COURT: Sustained."

"Q. Mr. Kunkel, what if anything did he say to you as to the operation of his car just prior to the accident?

"MR. BRUMLEVE: I object again.

"THE COURT: Sustained."

It cannot be claimed that this form of impeachment strictly meets the applicable requirements, nor can it be said the court committed error in requiring the plaintiff to adhere rigidly to the rule. It is only fair, when the object is to discredit a witness and show his or her testimony is not worthy of belief, that both the foundation and impeachment should be specific as to subject-matter, time, and place. The action of a trial court in requiring strict compliance with such

specifications cannot be limited by too severe criticism. A large discretion must be reposed in the trial court in enforcing the rules strictly or liberally. It is not a question whether the reviewing court would have admitted the evidence, but rather whether the trial court excluded evidence competent and admissible under the rules of evidence, to the prejudice of a party. It does not appear that the trial court went to such latter extent in either instance.

The plaintiff claims there was error in the admission of certain city ordinances, offered by the defendant, governing the operation of street cars upon the streets of the city. The basis of this contention is that the area involved in this case and upon which the collision occurred was not included in streets or within areas covered by the city ordinances. The difficulty with the position of the plaintiff is that in his petition he pleaded city ordinances applicable to city streets and offered these in evidence. It is true the defendant admitted the collision occurred "at the Mt. Adams Incline of said defendant." Even if this could be considered in connection with plats admitted in evidence as showing that the collision did not occur on a city street, still the plaintiff invited any error intervening by the admission of ordinances offered by the defendant applicable to city streets. 2 O. Jur., "Appeal & Error," Section 593, p. 640. Lester v Leuck, 142 Oh St, 91, 93.

A reading of the record does not clearly develop that the area involved in the action was the private property of the defendant. It appears to be conceded now that it was. It seems apparent had this fact been clearly developed at the trial, the confusion as to applicability of city ordinances would have been eliminated. Certainly, the Court would not have admitted such ordinances and charged upon them had the real situation been made apparent.

The plaintiff objects to the following portion of the general charge, to which emphasis has been added herein:

"Now ladies and gentlemen, you will examine the evidence in the case and determine under the burden of proof which I will later explain to you whether the defendant was negligent as that term has been defined, in any one or more respects as claimed by the plaintiff. If you find that the defendant was negligent in one or more of such respects by the degree of proof which I will explain, then you must determine whether any such negligence was the proximate cause of any injury or damage to the plaintiff as I have explained that term to you and defined it.

"Now the mere fact that a collision occurred up there on this occasion, the mere fact that the plaintiff may have been injured as a result of such collision does not give the plaintiff the right to recover from the defendant. He must support these claims. He must show that the defendant was negligent, and if he does show that it was negligent in some respect as he claims, that such negligence was the proximate cause of his injuries such as he may have sustained. Now this burden is that he prove those claims of negligence and proximate cause by a preponderance of the evidence and by a preponderance of the evidence is meant the greater weight of the evidence. It does not necessarily mean that he is required to have the greater number of witnesses. It does mean that the jurors after considering all of the evidence, before the plaintiff can recover must find that the evidence in support of his claim outweighs in some degree the evidence which is contrary to his claim, as to any one of his claims. If the evidence as to his claims, or any of them, is equally balanced, then he cannot recover from the defendant and your verdict should be for the defendant."

The trial court later charged:

"Now these issues of fact may be briefly stated to be—that is you must decide these issues which I will state in brief; first, was the defendant company, the Cincinnati Street Railway Company, negligent in any respect as claimed by the plaintiff, in any one or more of the respects claimed by the plaintiff? Secondly, if you find that the defendant company was negligent in one or more respects as claimed by the plaintiff, whether such negligence was the proximate cause of any injuries or damage to the plaintiff as he claims."

After the jury retired, certain questions were transmitted to the court which the jury wished answered. The jury was recalled and the court explained in answering its questions the portion of the charge which is subject to criticism. The court, in so explaining its previous charge, clearly and correctly stated the respective duties and rights of the parties and made it very plain that the plaintiff was entitled to recover if the evidence by the proper degree of proof sustained any claim of negligence alleged.

Taking all the charge into consideration and having in mind the latter emphasis upon the correct statement of the

law, it cannot be said the jury was misled. A different situation is here presented than was involved in **Bosjnak v Superior Sheet Steel Co., et al., 145 Oh St, 538,** and **Westropp v The E. W. Scripps Co., et al., 148 Oh St., 365.**

See, 2 O. Jur., "Appeal & Error", Section 767, p. 929; **Mansfield Public Utility & Service Co. v Grogg, 103 Oh St, 301, 302, 303.**

Plaintiff claims the court erred in stating to the jury that the area involved was outside the business district in the City and, hence, the reduced speed was not applicable. The plaintiff had invited any error in considering city ordinances applicable to streets.

As hereinbefore noted, there was a dearth of evidence as to the character of the area involved. The plaintiff alleged negligence due to speed of defendant's street car, he pleaded the speed ordinances of the City of Cincinnati, which vary with the areas involved. If plaintiff was entitled to a charge on slower speed, it became incumbent upon him to introduce evidence showing the existence of an area calling for the slower speed. In the absence of such evidence, the court had the right to infer the defendant was entitled to the benefit of the faster speed, applicable to areas specified in the ordinances.

Other errors assigned by plaintiff have been considered and in examining the basis for the charge of error, it does not appear that the action of the trial court was such as to demand a finding of prejudice to the plaintiff, requiring a reversal of the judgment, which is affirmed.

MATTHEWS, PJ, ROSS & HILDEBRANT, JJ, concur in syllabus, opinion & judgment.