CITY OF COLUMBUS, APPELLEE, *v.* FREEZE, APPELLANT.

(No. 5212—Decided March 2, 1955.)

*Mr. Chalmers P. Wylie,* city attorney, *Mr. Malcolm M. Prine* and *Mr. Frank A. Reda,* for appellee.
*Messrs. Cowan & Adams,* for appellant.

HORNBECK, J. This is an appeal on questions of law from conviction and sentence of defendant-appellant on a charge that he ''being then and there the driver of a certain motor vehicle, to wit, an automobile, did unlawfully fail to yield the right of way, at an intersection to a vehicle, streetcar, or trackless trolley approaching from the right: to wit K-4653,'' contrary to the ordinances of the city of Columbus.

The facts developed are that about 2 p. m. on September 19, 1954, the defendant was driving his automobile in a westerly direction at and through an intersection at Logan Street and Oakley Avenue in the city of Columbus. Logan Street runs east and west and Oakley Avenue north and south.

The prosecuting witness, Robert Guyton, was driving south on Oakley Avenue. A collision occurred in the intersection. As Guyton was on defendant's right, it was the claim of the city that he had the right of way. The defense was that Guyton did not have the right of way because he was not proceeding into the intersection in a lawful manner.

The prosecuting witness testified that on both sides of Oakley Avenue as he approached the intersection there were parked automobiles, and that there was not room for more than

one car to move between these cars to the right of the center of the street. He also testified that, at the time he entered the intersection and was moving through it, he was traveling at a speed of 20 miles per hour. He admitted that he probably was a little to his left of the center of Oakley Avenue projected, when the collision occurred.

There were but four witnesses who testified as to the movements of the automobiles as they entered and proceeded into the intersection and collided, the prosecuting witness, the defendant, his daughter Helen West, and Vinnie Davidson who lived on the southwest corner of the intersection. A police officer, Harry Carpenter, also testified as to certain physical facts which he observed at the scene of the accident and identified certain photographs which were introduced as exhibits. The defendant did not testify respecting the collision because he was rendered unconscious by the impact. However, he did testify at considerable length respecting his operation of his automobile. He said that, before he entered the intersection, he looked carefully and proceeded slowly or, as he put it, he was "eeching out" because of a line of traffic to the north and certain obstructions to his vision to his right. His daughter supported his testimony as to his due care as he approached the intersection and said that Guyton's car came into the intersection at a speed of at least 40 miles per hour. Davidson also testified that the speed of the car was at least 40 miles per hour.

It was the theory of the prosecuting witness that the defendant ran into his automobile, but the defendant contended that the Guyton car ran into his automobile. The photograph of the Guyton car, particularly the front, permits the inference that it ran into the Ford. Although this was not determinative of the question of the right of way, it lent some support to the testimony of the defendant as to how the accident occurred.

After Helen West, the daughter of the defendant, testified and the defense rested, the plaintiff recalled Officer Carpenter and these questions were put and answers and rulings of the court made:

"Q. Did you talk with Mrs. West, the daughter of the defendant, after this accident? A. Yes, sir.

"Q. Would you tell us the statement she made to you?

"Mr. Adams: Objection, Your Honor.

"The Court: Overruled.

"A. I asked the defendant what she saw—why the accident was caused. She told me that she, her mother and her father were looking at a house along the way. Evidently—I don't know whether it was a house for sale or an unusual house or something, and they were all looking the opposite direction. And that Mrs. West glanced up just in time to see the car coming, and she started to warn her father. She said, 'There's a car com—,' and she said that's as far as she got; there was a car coming, that's as far as she got, and then they were struck.

"Mr. Mitchell: All right, that's all."

Upon cross-examination of Mrs. West she was not asked whether she had made such a statement as was testified by the officer.

Defendant assigns two errors: One, that the court erred in the admission of the foregoing testimony of Officer Carpenter; two, that the judgment is against the manifest weight of the evidence.

The only proper purpose of the testimony of Officer Carpenter was to impeach Mrs. West on her examination in chief. If she made the statements to the officer to which he testified, the conclusion is permitted that she was falsifying when she testified to an entirely different state of facts. If the judge accepted the statement of the officer in the one particular he had a right to disbelieve all her testimony.

The case on the facts is close. This is not an action for damages for personal injuries growing out of negligence, and the proximate cause of the collision was not an issue. Had it been, the fact admitted by the prosecuting witness that he was on the left of the center of the intersection at the time of the collision would not, in our judgment, have been a proximate cause thereof.

It is essential to the impeachment of a witness by showing contradictory statements at variance with his testimony that "a foundation must be laid by stating to him on cross-examination the time, place, person involved in the supposed contradiction, and the definite statements supposed to have been made

by him, advising him, at least in substance, what the statements were, interrogating him respecting them, and asking him whether or not he made them, thereby, through calling his attention to them, affording him the opportunity of either admitting, denying or explaining them.'' 42 Ohio Jurisprudence, 408.

This proposition is supported by the following cases cited by counsel for defendant: *King* v. *Wicks*, 20 Ohio, 87; *Kent* v. *State*, 42 Ohio St., 426; *Association of Army and Navy Stores, Inc.*, v. *Schaengold*, 44 Ohio App., 40, 184 N. E., 17; *Thorp, Admx.*, v. *Maatz*, 56 Ohio App., 212, 10 N. E. (2d), 236; *Kunkel* v. *Cincinnati Street Ry. Co.*, 82 Ohio App., 341, 80 N. E. (2d), 442. As received, the evidence was hearsay, which counsel for defendant moved to strike. It is clear that the court erred in admitting this testimony over the objection of counsel for the defendant. The only question then is, was it prejudicial?

The test to be applied is found in Section 2945.83, Revised Code:

''No motion for a new trial shall be granted, * * *, nor shall any judgment of conviction be reversed in any court because of: * * *, (C) The admission or rejection of any evidence offered against or for the accused unless it affirmatively appears on the record that the accused was or may have been prejudiced thereby * * *.''

It is probable that the defendant may have been prejudiced by the admission of this testimony. The danger in its admission was that it may have had the effect of discrediting not only so much of the testimony of Mrs. West as pertained to the care of her father as he moved into the intersection, but all her testimony, including that relating to the speed of the prosecuting witness' automobile. The speed of the Guyton car was the most determinative issue made by the plea of the defendant, and Guyton's testimony on the subject was at variance with that of Davidson and Mrs. West. If Mrs. West was discredited, obviously the defense was weakened.

As we have indicated, if there was a question of proximate cause in this case, we would give a little consideration to the fact that the prosecuting witness admitted that he was driving to the left of the center of the intersection at the time of the collision. This fact was pertinent upon the one vital issue,

namely, whether Guyton lost his right of way by driving into and through the intersection in an unlawful manner, either in not keeping to the right of the center or in driving at an unlawful rate of speed. *Morris* v. *Bloomgren,* 127 Ohio St., 147, 187 N. E., 2, 89 A. L. R., 831. We are referred by the plaintiff to the applicable section of the code of the city of Columbus (27.304 [b] 3, 1952), which reads:

"No vehicle or trackless trolley shall, in overtaking and passing traffic, or at any other time, be driven to the left of the center or center line of the roadway under the following conditions: When approaching within 100 feet of or traversing any intersection or railroad grade crossing, *unless compliance with this section is impossible because of insufficient roadway space.*" (Emphasis ours.)

There is no doubt that this section and the exception thereto would have application to a distance from the entrance of the intersection 100 feet to the north thereof on Oakley Avenue and to the intersection, but it is doubtful if it has any application to the roadway in the intersection proper. It is evident that in the intersection the roadway is not affected by the parking on either side of the street before it merges into the intersection. All the evidence as to the narrowness of the pathway related to Oakley Avenue to the north of the intersection.

The permissible finding of the court that the testimony of Mrs. West was not credible may have materially affected the conviction.

The first assignment of error is well made.

Without comment we hold against the defendant on the second assignment of error.

The judgment is reversed and the cause remanded for a new trial.

*Judgment reversed.*

MILLER, P. J., and WISEMAN, J., concur.