## State v. Neal
*[Cite as 4 AOA 99]*

*Case No. 5-89-6*
*Hancock County, (3rd)*
*Decided June 29, 1990*

Mr. William Scott O'Brien, Attorney at Law, 410 West Sandusky Street, Suite 2, Findlay, Ohio 45840, for Appellant.

Mr. Joseph H. Niemeyer, Prosecuting Attorney, Mrs. Martha Jane Cooper, 116 West Lima Street, Findlay, Ohio 45840, for Appellee.

GUERNSEY, J.

This is an appeal by the defendant, Brian D. Neal, whose true name is Brian B. Neal, from a judgment of the Court of Common Pleas of Han-

cock County convicting and sentencing him on two counts, the first being for a violation of R.C. 2925.03(A)(5), Aggravated Trafficking in Drugs, and the second being for a violation of R.C. 2925.13(A), Permitting Drug Abuse. The defendant assigns error of the trial court in abusing its discretion and making an error of law (1) in not allowing defendant to offer proof as to the purity of the controlled substance relied upon by the State in a prosecution under R.C. 2925.03(A)(5), and (2) in not allowing defendant to present evidence of specific instances of inconsistent statements made in the past by a co-defendant.

The first count of the indictment charged the defendant with "knowingly sell[ing] a controlled substance, as defined in Ohio Revised Code, Section 3719.41, to-wit: Cocaine, a Schedule II controlled substance in an amount exceeding the bulk amount but less than three (3) times that amount, as defined in Ohio Revised Code, Section 2925.01(E)(1)." R.C. 2925.01(E) (1) defines "bulk amount" as being:

"(1) An amount equal to or exceeding ten grams or twenty-five unit doses of a compound, mixture, preparation, or substance which is, or which contains *any amount of* * * * *cocaine* * * * ." (Emphasis added.)

The state offered the testimony of one Larry Rentz, a criminalist with the Bureau of Criminal Identification (BCI) who testified that the gram weight of the substance involved in the alleged sale was 13.95 grams which, upon testing, was determined to contain an unstated amount of cocaine.

Prior to trial the state filed a motion in limine to prohibit the defendant or his witnesses from making any statement, comment or question, during trial "in reference to the purity of the controlled substance or mixture thereof which is the basis for the charges contained in the indictment." The trial court sustained the state's motion and ordered the defendant "not to make any statement, comment, or question at any time during the proceeding regarding the purity of the substance in question." On January 4, 1989, defendant moved for reconsideration of the trial court's order and on January 5, 1989, seven days before trial, the motion for reconsideration was overruled.

During trial, at the close of the BCI expert's testimony defense counsel made the following proffer:

" * * * If I might just briefly state, Your Honor, that while I had the chemist Mr. Rentz on cross-examination, before I asked him a few ques-

tions I approached the Bench with Mr. Fry [prosecuting attorney], and I told the Court that I wished the Court to reconsider its motion in limine that I'm under at the present time regarding the purity of the substance, and the Court saw fit to overrule my motion to reconsider that. And that therefore I'm bound by the motion in limine that was filed. And I did not question Mr. Rentz regarding the purity, however, for the Record and to proffer what the testimony would have been, would I have been allowed to proceed, I believe that Mr. Rentz would have testified that he performed no tests on the material contained in State's Exhibit 1F in order to determine its purity. I believe that's what he would have testified to.

"I further then would have called as my witness a Donald J. Nitskoff from Cleveland, who I believe I could have qualified as an expert in the chemical analysis of narcotics. And that he would have testified that the contents of State's Exhibit 1G contains a substance which does in fact contain cocaine, and that he did perform analysis of the purity thereof, and that that substance contained in State's Exhibit 1G was 25.1 percent pure, which rendered a gross weight of cocaine being 3.45 grams. And I would note that 3.45 grams is pretty close to 3.5 which is an 8 ball [sic] of cocaine. That is what I would proffer and it would be the evidence that I believe would have been elicited had the motion in limine been lifted."

The trial court then ruled on the record that the motion to reconsider is overruled and the evidence as to purity remains precluded based solely on the statute.

Basically defendant's argument is that because R.C. 2925.01(E) appears to equate a ten gram "bulk amount" with a twenty-five unit dose "bulk amount" then each ten gram bulk amount must have in it at least the same amount of pure cocaine as the amount of pure cocaine in twenty-five unit doses, and that being the case, it was incumbent upon the state to prove that such was the case respecting the substance which was the subject of the alleged sale by the defendant. The defendant does not rest his argument on the constitutional grounds of either due process or equal protection but relies wholly on the statutes involved.

It cannot be gainsaid that the definition of a crime is within the sound discretion of the General Assembly and not for the courts. Thus the legislature, in its infinite wisdom, had determined what is a controlled substance and what is

the bulk amount of a controlled substance. Thus, under the statute, the bulk amount may be either ten grams of a compound, mixture, preparation, or substance containing *any amount* of cocaine or may be twenty-five unit doses of a compound, a mixture, preparation, or substance containing *any amount* of cocaine. In either case the content or purity of cocaine is immaterial so long as there is *any amount* of cocaine in the compound or substance. The meaning of the statute is clear and the statute requires no construction. Illustrative of the legislature's authority in such matters are the cases of *State* v. *Scott* (1982), 69 Ohio St. 2d 439; *State* v. *Patterson* (1982), 69 Ohio St. 2d 445; and *State* v. *Wolpe* (1984), 11 Ohio St. 3d 50, dealing with convictions for sales of "drugs" involving misrepresentations of their content and containing no controlled substance.

The closest case we have been able to find approaching the facts of the case before us in *State* v. *Mattox* (1983), 13 Ohio App. 3d 52, involving a similar definition of "bulk amount" and affirming conviction on the basis of a random or representative sampling method of testing of five tablets proving beyond a reasonable doubt the presence of "any amount" of lysergic acid diethylamide (LSD) in ten tablets which were the subject of a sale. We find no reasonable distinction between that case and this on the issue thus involved and approve and follow same.

Accordingly, proof of the offense beyond a reasonable doubt existed on the proof of any amount of cocaine in the 13.95 grams bulk amount sold and the court did not commit error prejudicial to the defendant in not allowing the evidence sought to be submitted by the defendant as to the "purity" of the substance in question.

The second assignment of error involves alleged inconsistent statements made by one Jerry Himes. Himes had been involved in the drug transaction leading to the arrest and trial of defendant. He had himself been arrested and prior to testifying at defendant's trial had entered a plea of guilty to the counts with which he was charged and was serving out his sentence. During the state's case in chief in defendant's trial Himes testified about the incidents leading up to the drug buy involving undercover agents Holliday and Sparks, Himes and his wife, and the defendant. During cross-examination by defense counsel the following colloquy took place:

"Q Were any deals made by you by the Prosecutor's Office or the Sheriff's Office relative to changing your plea from not guilty to guilty to the lesser included offense?

"A No, sir, I'm incarcerated.

"* * *

"Q But you're not incarcerated on the charge that you were originally charged with, are you?

"A No, but I'm still incarcerated.

"* * *

"Q Did you ever discuss with anyone the fact that the Prosecutor's Office had offered to reduce your Count 1 in exchange for your testimony against Brian Neal?

"A No."

After the state rested, counsel for defendant attempted to call two witnesses to testify that on several occasions before his change of plea Himes stated to them that he had been offered a "deal" and had in fact made a "deal" to change his plea. The court would not allow the testimony finding that the issue is peripheral to the real issue of guilt or innocence of the defendant, it has only to do with the credibility of that particular witness, and it was not challenged on cross-examination by a statement to the witness to the effect that "if I presented a mister so and so who claims that you did indeed discuss this with him, as I recall that didn't appear in the record not one bit * * * I am going to sustain the objection to the testimony on the basis of Rule 613." Defense counsel then proffered that, if allowed to testify, Mr. Sharninghouse would testify that he talked with Himes at work in May of 1988, in September of 1988, and that Himes indicated to Sharninghouse that he had made a deal with the Prosecutor to turn state's evidence against defendant; and that a witness by the name of Danny Bowman was going to testify that on two other occasions Himes had said the same thing to Bowman about the deal.

In our opinion the court properly excluded this testimony of Sharninghouse and Bowman because the proper foundation was not laid in the examination of Himes. To lay a proper foundation Himes should have been asked as to his having made the alleged contradictory statement at a particular time and place and to a particular person. The question merely whether he ever discussed with anyone the fact that the prosecutor's office had offered to reduce the charges in exchange for Hime's testimony against defendant is not sufficient. *Kunkel* v. *Cincinnati St. Ry Co.* 1948), 82 Ohio App. 341. See also *State* v. *Talbert* (1986), 33 Ohio App. 3d 282. In the staff note to Evid. R. 613(B) it is said:

" * * * Rule 613(B) preconditions admission of a prior inconsistent statement on a witness's opportunity to explain or deny the same and the opposite party's opportunity to interrogate on the statement. The rule does not do away with the necessity of laying a foundation, a procedure most easily accomplished at the time the witness is cross-examined. * * *"

In that defense counsel did not lay a proper foundation we find that the trial court did not commit prejudicial error as assigned in the second assignment of error.

Having found no error prejudicial to the defendant in any of the particulars assigned and argued, the judgment of the trial court is affirmed.

*Judgment affirmed.*

MILLER, P.J., and EVANS, J., concur.