Jones, J.
 

 Since the cases of
 
 Heidle
 
 v.
 
 Baldwin,
 
 118 Ohio St., 375, 161 N. E., 44, 58 A. L. R., 1186, and
 
 George Ast Candy Co.
 
 v.
 
 Kling,
 
 121 Ohio St., 362, 169 N. E., 292, were reported by this court, our trial and
 
 *151
 
 appellate courts have entertained great perplexity in applying the principles therein announced to cases involving collisions at highway intersections; and some of the appellate courts, as did the Court of Appeals in the instant case, while ethically adhering to those decisions, have shown an inclination to question their legal accuracy, in view of the peculiar and express' provisions of the Ohio act regulating traffic at such-intersections. That the legal rules announced in the foregoing cases have caused tribulation to our lower courts is evidenced by the fact that in the
 
 George Ast Candy Co. case
 
 the judge delivering the opinion confessed that
 
 “Heidle
 
 v.
 
 Baldwin
 
 has been several times under discussion at the bar of this court since the date of its rendition,” etc. What was true then is still true, although three and one-half years have expired, since that confession was made. We have therefore permitted the certification of the instant case for the purpose of reconsidering those cases and defining and clarifying the duties of drivers of vehicles approaching intersections on the state highways. And at the outset it may be stated that counsel have been unable to discover any other state which has traffic regulations or definitions of “right of way” such as we have in Ohio. We are therefore unable to place reliance upon the cited cases reported elsewhere dealing with statutes essentially different from our own.
 

 This collision did not occur at a main thoroughfare. Morris, the plaintiff, was approaching from the right; the defendant, Bloomgren, from Morris’ left; therefore Morris, under express terms of the statute, if lawfully driving, had the conceded right of way. The obligations and duties of the parties approaching the intersection are specifically defined by the two following sections of the Ohio Traffic Code:
 

 Section 6310-28. “ ‘Right of way’ means the right of a vehicle
 
 to proceed uninterruptedly in a lawful manner in the direction in which it is moving
 
 in pref-'
 
 *152
 
 erence to another vehicle approaching from a different direction into its path.”
 

 Section 6310-28». “Excepting where otherwise hereinafter provided the operator of a vehicle
 
 shall yield the right of way at the intersection of its path and the path of another vehicle to the vehicle approaching from the right.”
 
 (Italics ours.) .
 

 The
 
 Heidle
 
 and
 
 Candy Co. cases, supra,
 
 construed those sections as not conferring an unqualified right of way upon the driver of a vehicle approaching from the right; but, ignoring the preference thereby given him, they held that such driver was charged with the obligations of duty arising under the common law, that of using ordinary care. The minority of this court were of the opinion that such an interpretation of the quoted sections was unwarranted judicial legislation. In their dissent in the
 
 Candy Co. case, supra,
 
 at page 368, they stated that the rule adopted by the majority relegates the driver approaching from the right “to the same duties as would arise if no statute existed; it deprives him of the advantage of the statute giving him the uninterrupted right of way; it permits the plaintiff to violate the law with impunity, and places both drivers on an equal plane by requiring ordinary care where their paths converge; it emasculates the statute, and requires the defendant, in such a situation, to exercise ordinary care under the rules of the common law, although he may be driving on the main highway in a lawful manner.” The two quoted sections are cognate and must be construed together, since they both pertain to the right of way at intersections. Section 6310-28», General Code, requires the operator of a vehicle to yield the right of way at the intersection of its path with the path of another vehicle approaching from his right; and Section 6310-28 explicitly defines the “right of way” as the right
 
 ‘‘to proceed uninterruptedly in a lawful mawner in the direction in which it is moving,”
 
 in preference to another vehicle
 
 *153
 
 approaching into its path. The Legislature could not have used more exact and certain terms in according the driver approaching from the right an unqualified right to proceed uninterruptedly in the direction he was moving, so long as he proceeded in a lawful manner. The
 
 Heidle
 
 and
 
 Candy Co. cases, supra,
 
 gave but little attention to the clauses found in those sections which we have italicized. By a process of judicial construction those cases have nullified the statute, by withholding from the driver possessing the favored right of way the privilege of proceeding without interruption in the direction in which he was moving, and have confined both drivers of converging vehicles to the same care in approaching the intersection that was required before the statute was enacted — namely, that degree of care exacted under the common law. What boots it to the lawful driver who is given an unequivocal right of way, if that right be denied him by judicial interpretation?
 

 It is argued that a construction such as we give to those sections disadvantages the unfavored driver and puts a premium on an unlawful, careless or negligent driver who happens to have the right of way, and that it places upon the driver of the vehicle approaching from the left too great a responsibility for resulting collisions; but this is probably what the Legislature intended. In Ohio we have various laws regulating the speed limit of automobiles. One of them, Section 12603, General Code, prohibits the operation of motor vehicles in public highways at a speed greater than is reasonable or proper, having due regard to the traffic, etc. The trial court covered that section in its general charge. In this connection it must be borne in mind that the privileged right of way is granted only to those who proceed
 
 “in a lawful manner.”
 
 If the privileged occupant of the right of way is not so proceeding, if at the time of approaching or crossing the intersection he is driving at an unlawful, excessive
 
 *154
 
 speed, or if he should he found violating Section 12603, or should be driving through the intersection on the left or wrong side of the highway, such driver would not be proceeding in a lawful manner, and could not claim the preference given him by the quoted traffic sections. However, so long as such driver proceeds lawfully, at a speed that is reasonable and proper, and without violation of, but in obedience to, law or ordinance, he is entitled to maintain his right of way, his statutory right to proceed uninterruptedly, while approaching and crossing the intersection. Because of the dangers lurking and fatalities occurring at highway intersections, the Legislature adopted definite rules for those approaching intersecting highways, rules intended to safeguard the traveling public. For those who obey its traffic laws, it gives its shield of protection; to those who disregard them, it denies that shield.
 

 Both drivers are presumed to know the law, and we must indulge the presumption that the driver approaching from the left, in this case, Bloomgren, knew that Morris, if he were lawfully approaching, had the right of way. It therefore became Bloomgren’s duty in approaching the intersection to ascertain whether such lawfully driven vehicle, approaching from his right, would enter the intersection at or near the time he did. Ordinarily the operator of a vehicle is able to ascertain before he reaches the intersection whether another vehicle is approaching from his right; but, in any event, after entering the intersection he has a further leeway of some distance between the point of entering the intersection and its center for ascertaining such approach before he drives into the path of the vehicle possessing the right of way.
 

 But it is contended that, if the'driver, who is required to yield the right of way, reaches the intersection first, he has a superior right to proceed, or at least a right to proceed equal to that of the vehicle approach
 
 *155
 
 ing from Ms rigM. There is no such limitation or qualification found in the statute. Furthermore, an adherence to that contention would frequently result in collision where both of the vehicles were equally distant, or nearly so, from the point of intersection. Let us test this contention by its practical application; let us assume that both drivers, traveling in a lawful manner, were approaching the intersection at about the same time and speed; and the vehicle approaching on the left entered the intersection a moment or two before the vehicle on the right, either by increasing its speed or because of having a few feet less to travel than the vehicle having the right of way. The Ohio traffic regulations were designed to avoid those dangers that are inherent in simultaneous approaches by requiring a yielding of the right of way; and they were also designed to prevent careless drivers from crashing highway intersections.
 

 In the dissenting opinion in
 
 George Ast Candy Co.
 
 v.
 
 Kling, supra,
 
 we stated that ‘ ‘ The right of way sections of our Ohio Code are based upon their practical application, and upon past experience derived from the operation of automobiles over our highways.” We can amplify that declaration with the further statement that our Ohio Traffic Code was sponsored by Automobile Associations, whose counsel assert that its provisions were sponsored and adopted for the purpose of giving motorists a definite rule respecting “right of way,” so as “to avoid the confusion and danger inherent in races to get to the intersection first.” These precise and defimte traffic regulations imbedded in the Ohio Code were adopted for the protection of the traveling public; their purpose was to avoid collisions at intersections by compelling a driver to yield the right of way to a vehicle approaching from the right so long as it proceeded in a lawful manner.
 

 During the course of the trial plaintiff requested special charges to be given to the jury before argu
 
 *156
 
 ment. It is only necessary to allude to No. 4, which was refused, and No. 7, which was given:
 

 “No. 4. ‘Right of Way’ means the right of a vehicle to proceed uninterruptedly in a lawful manner in the direction in which it is moving in preference to another vehicle approaching from a different direction into its path. The operator of a vehicle shall yield the right of way at the intersection of its path and the path of another vehicle, to the vehicle approaching from the right. ’ ’
 

 “No. 7. The operator of a vehicle approaching an intersection shall yield the right of way to a vehicle which has entered the intersection. When two vehicles enter the intersection at the same time, the operator of the vehicle on the left shall yield the right to the vehicle on the right. ’ ’
 

 Special charge No. 4 should have been given by the trial court. It is a substantial repetition of the traffic sections of the Ohio law, and embodies all the elements necessary to confer the “right of way” privilege to the vehicle approaching from' the right. Sections 6310-28 and 6310-28», General Code, confer an absolute right of way upon the motor vehicle approaching from the right, qualified only by the requirement that, in proceeding uninterruptedly in the direction in which it is moving, it must proceed
 
 in a lawful manner.
 
 The phrase “in a lawful manner” is the pole star of the traffic sections, pointing out the
 
 sine qua non
 
 obligation cast upon the vehicle approaching from the right, which, to maintain its right, it must observe. Why so scant attention was given to this phrase in the
 
 Heidle
 
 and
 
 Candy Co. cases, supra,
 
 we are unable to conjecture. The connotation running through both cases is that in approaching the intersection both vehicles are on an equal plane, and both drivers governed by the same common-law rules, utterly ignoring the law that gives the vehicle having the preference the right to “proceed uninterruptedly,” and wholly disregarding
 
 *157
 
 the requirement that the other or servient vehicle must yield thereto. Since those cases deprive the favored vehicle of its unqualified privilege to proceed, if proceeding in a lawful manner, and since they relegate both vehicles to like care at the intersection approach, they are both disapproved.
 

 The plaintiff below cannot complain of prejudicial error in the refusal to give special charge No. 4, because he secured a verdict. The Court of Appeals reversed the case because the trial court gave to the jury special charge No. 7. The first sentence of that charge is erroneous for the reasons heretofore stated; it would permit a vehicle racing for the intersection to claim its right of way as a legal right. Furthermore the traffic sections of the Code provide when and how a vehicle must yield the right of way. The second sentence in this special charge requested by plaintiff below, stating that “the operator of the vehicle on the left shall yield to the vehicle on the right,” is not consonant with the sections of the Code for the reasons heretofore stated, viz. that an operator of a vehicle approaching from the left is required to yield to the vehicle approaching from the right, provided the latter is being driven in a lawful manner. One of the issues in this case, arising in the pleadings, was whether the vehicle on the right operated by Morris was being driven in a lawful manner. The defendant’s answer alleged that Morris’ car was being driven at a dangerous and excessive speed; and while Morris disputes it, and testifies that he stopped at the intersection, the defendant, Bloomgren, testified that Morris’ car was coming down Rhea avenue at forty to forty-five miles an hour. This intersection was in a residential and closely built-up portion of the city. Under such circumstances the question whether Morris’ vehicle was being driven in a lawful manner was for the jury. Since the phrase “in a lawful manner” was not included in request No. 7, said special request
 
 *158
 
 was erroneous, not for the reasons given by the Court of Appeals, but because of the elimination of the phrase referred to.
 

 In its general charge to the jury, the court used the following language: “So the court says that if plaintiff reached the intersection of Rhea avenue and Eaton avenue at the same time, or before defendant reached said intersection, then it was the duty of the defendant to yield the right of way to the plaintiff, and if he failed so to 'do he would be negligent. On the other hand if you find that the defendant reached said intersection before plaintiff reached said intersection, then there would be no duty imposed upon defendant to yield the right of way to plaintiff solely because of that fact.” This is subject to the same criticism as special charge No. 7, and is disposed of heretofore in this opinion. The phrase “in a lawful manner” is also absent from that portion of the charge.
 
 In sum
 
 the court tells the jury that whoever reached the intersection first, the plaintiff or defendant, he who first gained it had the right of way. Under this charge, if the plaintiff were approaching the intersection at ten miles an hour, and the defendant at eighty miles an hour, thereby reaching the intersection first, the latter could claim the right of way under that charge. Nothing was said in the charge about the method of approach, whether done in a safe or unsafe manner. The charge, in effect, permits any driver who crashes an intersection at any rate of speed to obtain the right of way privilege over another who may be driving at a lawful speed.
 

 We have already stated that the driver of a lawfully driven vehicle approaching from the right had the right to assume that the operator of the vehicle approaching from the left would obey the law and yield him the right of way. However, if such operator disobeyed the law, and failed or refused to yield the right of way to the vehicle that possessed it, a situation
 
 *159
 
 might arise whereby an obligation of care would arise upon the part of the driver having the right of way. If he should discover, just as he was approaching or entering the intersection, that the driver of the vehicle on his left was violating the law, and was not yielding to him the right of way, it then became the duty of the driver lawfully having the right of way not to wantonly injure the other, but to use ordinary care to avoid injuring him, after discovering and appreciating the dangerous peril in which the negligent driver had placed himself.
 

 We are therefore compelled to affirm the decision of the Court of Appeals, not for the reasons assigned by it, but solely because of the fact that, in charging the jury upon the statutory right of way, the trial court failed to qualify that privilege by yielding the right of way to such vehicle providing it was proceeding in a lawful manner. The judgment of the Court of Appeals will be affirmed, and the cause remanded to the trial court for further proceedings according to law.
 

 Judgment affirmed.
 

 Weygandt, C. J., Day, Allen, Stephenson and Matthias, JJ., concur.
 

 Beyis, J., not participating.