DECISION AND JUDGMENT ENTRY
{¶ 1} This appeal comes to us from a judgment of the Lucas County Court of Common Pleas denying appellants' motion for directed verdict. Because we conclude that the trial court properly denied appellants' motion for directed verdict, we affirm. *Page 2 
 {¶ 2} Appellants, Cincinnati Insurance Company and Appliance Center, sued appellees, Watkins Motor Lines, Inc. and its employee, Larkin E. Servis, alleging negligence in causing a motor vehicle collision, which allegedly resulted in damages to a box truck used for the delivery of appliances. Appellees filed an answer and counterclaim, and a third-party complaint to add appellant, Ronald Stachowiak, the Appliance Center employee who was driving the box truck, as a third-party defendant. The court conducted a jury trial and the following evidence was presented.
 {¶ 3} At trial, appellee, Larkin E. Servis, testified that he worked for Watkins Motor Lines. On April 26, 2005, the day of the accident, Servis was driving a company semi-truck. Servis recalled that he was westbound on Alexis Road, approached the intersection with Benore Road (north), and Enterprise Boulevard (south) and pulled into the left-hand turn lane. He did not recall any cars in front of him. The weather was overcast and rainy, causing the pavement to be wet. Servis stated that when the light turned yellow, he entered the intersection and began to complete his turn. He noticed that a car facing him in the curb lane was stopped, but did not see any other approaching vehicles. As he turned left, he was then struck on the right front side of his truck by the Appliance Center box truck.
 {¶ 4} Appellant, Ronald Stachowiak, then testified that, prior to the accident, he was driving the Appliance Center box truck east on Alexis Road. He was traveling the speed limit of 50 m.p.h. as he approached the intersection at Benore and Enterprise. Stachowiak testified that he was "not sure really" what color the light was as he *Page 3 
approached, but was "assuming it was yellow because I know that I tapped on my brakes before I went through the intersection * * *."
 {¶ 5} Stachowiak said he remembered a green car turning in front of him across the intersection, "making a left-hand turn at the light." He saw the light turn yellow, tapped his brakes, and then thought he could proceed through the intersection. Stachowiak then saw the semi-truck "just like kind of out, out like he didn't stop." Stachowiak said he slammed on his brakes, but was unable to avoid the collision. When asked if he saw the light turn red before he entered the intersection, Stachowiak stated, "Not that I remember, no." He stated that he saw nothing in front of him that would have blocked the semi-driver's view. When asked if he was certain that the light was not red as he entered the intersection, Stachowiak said, "I don't know for certain, but I'm pretty positive that it wasn't." He also acknowledged that, during a previous deposition, he responded to a question about whether he ran the red light, stating, "I have no idea." He also said he did not recall telling a police officer at the scene that he ran the red light.
 {¶ 6} Christopher Kamelesky then testified that he was riding in the Appliance Center truck with Stachowiak on the day of the accident. He stated that the speed limit was 45 or 50 m.p.h. and that, as he normally did, Stachowiak was driving at five miles per hour over the speed limit. Kamelesky testified that, as they approached the intersection, the traffic light turned yellow just as a car turning in front of them was in the intersection. He said Stachowiak tapped the brakes and then was committed to going through the yellow light. Kamelesky said that there would not have been enough time for *Page 4 
Stachowiak to stop because the truck would have probably slid out into the intersection. He said that as the car cleared, the semi-truck then pulled in front of the box truck. Stachowiak slammed on the brakes, but the front right side of the box truck collided with the front right side of the semi-truck. Kamelesky said he did not see the light change to red, but did not know what color the light was immediately before the vehicles collided.
 {¶ 7} The next witness, Joe Petersberger, testified that he worked nearby and was very familiar with the intersection where the accident occurred. At the time of the accident, he was driving home from work and was stopped at the red light, waiting to turn left from Benore onto eastbound Alexis. He recalled stating in his deposition that the box truck was traveling with the stream of traffic, about the speed limit of 50 m.p.h. He saw a green vehicle in front of the semi-truck turn left from Alexis to Enterprise. He then saw the left-turning semi-truck pull into the intersection and then stop.
 {¶ 8} Petersberger said the light facing his lane changed to green, and the semi-truck was proceeding through the intersection to complete his left turn. Petersberger said he started forward, but then braked as he saw the box truck enter the intersection and collide with the semi-truck. Petersberger said he was looking straight ahead and did not see the box truck until after it slid into the intersection. He also did not see the color of the Alexis Road light just before the accident, but about one or two seconds lapsed between when his own light had turned green and the occurrence of the collision. He said that when the light facing his lane turned green, however, the semi-truck was in the *Page 5 
middle of the intersection and the box truck was not. He noted that when the light was green for his own direction of travel, it would have been red to the vehicles on Alexis.
 {¶ 9} Appellees moved for a directed verdict, which the court denied. Appellees then called one witness, Toledo Police Officer, Amanda Evans, who testified that she was the first officer at the scene of the accident. She stated that she talked to the parties and interviewed an independent witness, Joe Petersberger, who was in another vehicle at the scene and was not involved in the accident.
 {¶ 10} Both parties then rested, and appellants moved for partial directed verdict as to Servis's negligence on the basis that he turned in front of the oncoming visible box truck. Appellants argued that Servis had a duty to look and his failure to avoid the collision constituted negligence as a matter of law. Appellees responded that this conclusion would only be true if Servis had turned in front of a vehicle that had the right-of-way. Since evidence was presented that Stachowiak may have run a red light, appellees argued that reasonable minds could differ as to whether Servis was negligent or was the proximate cause of the accident. The court denied the motion, noting that each party should have used ordinary care, a decision which was a matter for the jury.
 {¶ 11} The jury found in favor of appellees, Watkins Motor Lines, Inc. and Larkin Servis. The jury answered specific interrogatories, indicating that they found that Stachowiak's negligence proximately caused the accident, not any negligence by Servis.
 {¶ 12} Appellants, Cincinnati Insurance Company, Appliance Center, and Ronald Stachowiak argue the following sole assignment of error: *Page 6 
 {¶ 13} "The trial court committed reversible error by denying the motion for directed verdict of appellants."
 {¶ 14} The standard of review on appeal of a directed verdict is the same as the standard applied by the trial court. If the court, after "construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue." Texler v. D.O. Summers Cleaners Shirt Laundry Co. (1998),81 Ohio St.3d 677, 679. A motion for a directed verdict must be denied where there is substantial, competent evidence in support of the non-moving party, upon which reasonable minds could reach different conclusions. Id., citing to Hawkins v. Ivy (1977), 50 Ohio St.2d 114,115.
 {¶ 15} In addition, the court must not consider the weight of the evidence or the credibility of the witnesses, but must determine whether there exists any evidence of substantial, probative value in support of the non-moving party. Id. A motion for a directed verdict presents a question of law, in that the materiality of the evidence is examined rather than the conclusions to be drawn from the evidence. Id. at 680; Civ. R. 50(A)(4).
 {¶ 16} Normally, when a statute imposes a specific duty for the safety of others, a violation of that statute constitutes negligence per se.Chambers v. St. Mary's School (1998), 82 Ohio St.3d 563, 565. Negligence per se does not, however, equal liability *Page 7 
per se. Id. Simply because the law presumes negligence from a person's violation of a statute, it does not mean that the law presumes that the negligence was the proximate cause of the inflicted harm. Id.;Merchants Mut. Ins. Co. v. Baker (1984), 15 Ohio St.3d 316, 318. In cases where reasonable minds could differ as to which acts, omissions, or violations of a statute constitute the proximate cause of an accident, the determination is a matter for the jury. Merchants Mut.Ins. Co., supra.
 {¶ 17} R.C. 4511.42 provides that:
 {¶ 18} "(A) The operator of a vehicle * * * trolley intending to turn to the left within an intersection * * * shall yield the right of way to any vehicle * * * approaching from the opposite direction, whenever the approaching vehicle * * * is within the intersection or so close to the intersection * * * as to constitute an immediate hazard."
 {¶ 19} "Right of way" means the right of a vehicle "to proceed uninterruptedly in a lawful manner in the direction in which it * * * is moving in preference to another vehicle * * * approaching from a different direction into its * * * path; * * *." R.C. 4511.01(UU)(1).
 {¶ 20} A driver with a right-of-way has no duty to look for and yield to drivers who violate the right-of-way at an intersecting stop.Deming v. Osinski (1970), 24 Ohio St.2d 179, 181, citing to Morris v.Bloomgren (1933), 127 Ohio St. 147. See, also, Lumaye v. Johnson (1992),80 Ohio App.3d 141, 145. Nevertheless, "[t]he driver of a vehicle lawfully approaching from the right has the right to assume that the driver of the vehicle approaching from the left will obey the law by yielding the right of way. If *Page 8 
however the former, just as he is approaching or entering the intersection, discovers that the latter is not yielding the right of way and has thereby placed himself in a perilous situation, it becomes the duty of the former to use ordinary care not to injure the latter after becoming aware of his perilous situation." Morris, supra, at paragraph five of the syllabus.
 {¶ 21} In this case, the evidence presented indicated two competing rights-of-way. As the non-turning vehicle, appellant Stachowiak initially had the presumed right-of-way to proceed lawfully through the intersection. Nevertheless, appellee Servis, also had the right-of-way to complete his left-hand turn, after determining the roadway ahead was clear and safe. Evidence was presented from which the jury could have found one of several possible scenarios, including the following: (1) that appellant legally entered the intersection before the traffic light turned red, and appellee caused the accident by failing to yield by wrongfully turning in front of appellant; (2) that appellant illegally entered the intersection after the traffic light turned red, but appellee should or could have seen appellant and could have avoided the accident by not completing his turn; or (3) that appellee legally entered the intersection when the traffic light was yellow, was waiting to turn, had the presumptive right-of-way and expectation that oncoming traffic would stop after the traffic light turned red, and that appellant illegally entered the intersection and caused the accident by hitting appellee.
 {¶ 22} The testimony is conflicting, with each party insisting that he had the ultimate right-of-way. Consequently, determining the credibility of witnesses and any *Page 9 
conflict in the facts and circumstances surrounding the two competing presumptions, and which party was the actual proximate cause of the accident, remained matters for the jury to decide. Therefore, because substantial, competent evidence was presented in support of the non-moving party, upon which reasonable minds could reach different conclusions, the trial court properly denied appellants' motion for directed verdict.
 {¶ 23} Accordingly, appellants' sole assignment of error is not well-taken.
 {¶ 24} The judgment of the Lucas County Court of Common Pleas is affirmed. Appellants are ordered to pay the costs of this appeal pursuant to App. R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4.
Mark L. Pietrykowski, J., William J. Skow, P.J., Thomas J. Osowik, J., CONCUR. *Page 1