NOT RECOMMENDED FOR PUBLICATION
File Name: 15a0391n.06

No. 14-3477

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| GREAT WEST CASUALTY COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VIOREL VLAD, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| | ) | |
| v. | ) | |
| | ) | |
| P.A.M. TRANSPORT, INC.; KALVIN SCOTT, JR., | ) | |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |

BEFORE:    BATCHELDER, MOORE, and SUTTON, Circuit Judges

**ALICE M. BATCHELDER, Circuit Judge.**   This diversity case arises from a crash between two tractor-trailers on the Ohio Turnpike on May 4, 2011.  After a trial, a federal jury found plaintiff Viorel Vlad and defendants Kalvin Scott, Jr. and his employer, P.A.M. Transport ("PAM"), equally liable.  Vlad now contends that the district court erred by including a jury instruction on the "duty to look."  Because, when viewing them as a whole, we do not find the jury instructions to be confusing, misleading, and prejudicial, we AFFIRM the district court's judgment.

**I.**

Shortly after midnight on May 4, 2011, Kalvin Scott, Jr., a truck driver for PAM, pulled off onto the side of the Ohio Turnpike for a brief respite. After a short time, he started up his truck and attempted to re-enter the highway. He checked his mirrors as he attempted to re-enter but did not see any traffic in the right lane. He did, however, notice trucks moving over to the left lane to let him merge. As he merged onto the highway, he was travelling at a speed of at least thirty-five, but no more than forty-five, miles-per-hour.

Meanwhile, Viorel Vlad was driving his truck in the right lane of the Ohio Turnpike at just under the posted speed limit of seventy miles-per-hour. Vlad gave two different accounts as to what happened that night: one in a police report the day of the accident and one at trial. In the police report, he stated that he was driving in the right lane when he noticed a truck on the right shoulder. As the truck started to pull out into the right lane, Vlad began to brake. When he was 300 feet away from the truck, however, he noticed that it was going "really slow." Because there were trucks in the left lane, he could not move over to let the other truck into the right lane. Due to his inability to move, he crashed into the merging truck.

At trial, however, Vlad testified that he noticed Scott's truck on the side of the road because he saw other cars' headlights reflecting off of it. He believed the truck was "broken down or something like that." At that point, he checked his mirrors and attempted to move over to the left lane to give this truck space, but there were trucks in the left lane that would not let him over. He did not see Scott's truck again until he ran into it, because Scott just drove out in front of him.

Regardless of how it happened, Vlad's truck rear-ended Scott's truck. This collision caused substantial damage to Vlad's truck, and also caused Vlad significant injuries and loss of

work. Invoking diversity jurisdiction, Vlad filed a complaint in federal district court against Scott and PAM for medical expenses and pain-and-suffering damages. Vlad contended that Scott negligently entered the highway into Vlad's right-of-way. Scott, on the other hand, raised the affirmative defense that Vlad was negligent in failing to maintain an assured clear distance between the two trucks.

The district court instructed the jury on many points of law, including the definitions of right-of-way and assured clear distance. It also included a jury instruction on the duty to look: "Failure to see that which a reasonably careful person under like circumstances would have seen is negligence. A driver is negligent when he does not continue to look, if, under the circumstances, a reasonably careful person would have continued to look." After hearing the jury instructions and considering the evidence, the jury returned a verdict finding Vlad and Scott equally negligent. Because of this verdict, the district court entered a judgment awarding Vlad half of the $256,000 in damages the jury had found.

Vlad timely appealed, challenging the "duty to look" instruction as erroneous.

**II.**

"Because the correctness of jury instructions is a question of law, we review *de novo* a district court's jury instructions." *Jones v. Federated Fin. Reserve Corp.*, 144 F.3d 961, 966 (6th Cir. 1998). Although Vlad is challenging only one particular instruction, "[w]e cannot look at only certain parts of the instructions 'in isolation; we must consider the charge as a whole.'" *Miami Valley Fair Hous. Ctr., Inc. v. Connor Grp.*, 725 F.3d 571, 579 (6th Cir. 2013) (quoting *United States v. Prince*, 214 F.3d 740, 760–61 (6th Cir. 2000)). "The standard on appeal for a court's charge to the jury is whether the charge, taken as a whole, fairly and adequately submits the issues and applicable law to the jury." *Fisher v. Ford Motor Co.*, 224 F.3d 570, 575–76 (6th

Cir. 2000) (internal quotation marks omitted). "We will reverse a jury's verdict on the basis of improper instructions only when the instructions, when viewed as a whole, are confusing, misleading, and prejudicial." *Barnes v. Owens-Corning Fiberglass Corp.*, 201 F.3d 815, 822 (6th Cir. 2000). We have interpreted this standard as requiring "both an error in jury instructions and resulting prejudice before reversal is justified." *Roberts v. Galen of Va., Inc.*, 325 F.3d 776, 787 n.3 (6th Cir. 2003).

Because this is a diversity case, "federal law governs our standard of review for determining whether a jury instruction is prejudicial." *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 166 (6th Cir. 1993) (internal quotation marks and citations omitted). State law, however, determines the substance of the jury instructions. *Persian Galleries, Inc. v. Transcon. Ins. Co.*, 38 F.3d 253, 257 (6th Cir. 1994). "In diversity cases such as this, we apply state law in accordance with the controlling decisions of the state supreme court." *Allstate Ins. Co. v. Thrifty Rent-A-Car Sys., Inc.*, 249 F.3d 450, 454 (6th Cir. 2001).

Turning first to the question of whether this jury instruction was erroneous, Vlad argues that Ohio case law uniformly rejects the inclusion of a "duty to look" instruction applicable to the right-of-way driver. Ohio law defines "right-of-way" as "[t]he right of a vehicle . . . to proceed uninterruptedly in a lawful manner in the direction in which it . . . is moving in preference to another vehicle . . . approaching from a different direction into its . . . path." Ohio Rev. Code Ann. § 4511.01(UU)(1). In *Morris v. Bloomgren*, the Ohio Supreme Court held that this statute confers "an absolute right of way upon the motor vehicle approaching from the right, qualified only by the requirement that, in proceeding uninterruptedly in the direction in which it is moving, it must proceed in a lawful manner." 187 N.E. 2, 5 (Ohio 1933) (emphasis omitted).

To bolster his point, Vlad heavily relies on an application of *Morris* in the Ohio Supreme Court case *Deming v. Osinski*, 265 N.E.2d 554 (Ohio 1970). In that case, a lower court had given an instruction that a plaintiff with the right-of-way must "look, look effectively and continue to look and otherwise remain alert." *Id.* at 555. The court held that this instruction "completely ignores our decision in *Morris*." *Id.* Such an instruction, "by denying the vehicle approaching from the right its statutory privilege of proceeding uninterruptedly if it proceeds in a lawful manner, and by placing the drivers of both vehicles upon an equal plane in approaching an intersection and relegating both to the rules of care existing at common law," entirely ignores "the preferential status of the vehicle approaching from the right and the servient status of the other vehicle." *Id.* at 556.

In *Deming*, however, there was "nothing in the record to indicate that . . . [plaintiff] acted in an unlawful manner." *Id.* This is significant because a driver can lose the right-of-way by driving in an unlawful manner, such as by violating a traffic statute. One of these traffic statutes is the assured-clear-distance law. That ordinance provides that "[n]o person shall drive any motor vehicle . . . at a greater speed than will permit the person to bring it to a stop within the assured clear distance ahead." Ohio Rev. Code Ann. § 4511.21(A). In our case, then, as opposed to *Deming*, there *is* evidence in the record indicating that Vlad may have been driving in an unlawful manner. If the jury believed Vlad's story given in the police report, then Vlad may have violated the assured-clear-distance statute by failing to maintain enough distance to avoid a collision between his truck and a truck he saw 300 feet away. This case, therefore, is not *Deming*.

In fact, *Deming* specifically juxtaposes its situation with a situation in which a vehicle is "proceeding in violation of a law or ordinance." *Deming*, 265 N.E.2d at 556. In that context,

"such vehicle loses its preferential status and the relative obligations of the drivers of the converging vehicles are governed by the rule of the common law." *Id.* *Deming* thus differentiates between drivers with the right-of-way and drivers that have lost the right-of-way because they violated a statute.

Under one of Vlad's version of the facts, Vlad would have maintained the right-of-way until the moment of the crash, and under the other version, Vlad would have lost the right-of-way by violating the assured-clear-distance statute. *Deming* tells us that the "duty to look" instruction would be improper in the former context, but says nothing about the latter context. Further, Vlad has not pointed us to any Ohio case law holding that the "duty to look" instruction would be erroneous in a situation where the evidence about the right-of-way driver's lawfulness is mixed. And the instruction is surely not *per se* erroneous, because it mirrors the Ohio pattern instruction on the "duty to look" almost exactly. *See* 1 OJI-CV 401.05. Vlad has thus given us no reason to believe that, apart from the situation described in *Deming* in which the right-of-way driver's conduct is unimpeachable, the Ohio Supreme Court would find erroneous an instruction that comports with one of its pattern instructions.

Even if the instruction were erroneous, however, it is certainly not prejudicial when considered in the context of the charge as a whole. The district court instructed the jury on the elements of negligence, the assured-clear-distance statute, the right-of-way, and the duty of ordinary care—all instructions that Vlad has not appealed. In this context, an error in one provision of the jury instructions would not rise to a prejudicial level. *See, e.g.*, *Bach v. Oucho*, 697 F.2d 741, 743 (6th Cir. 1985) (rejecting a challenge to jury instructions because the instructions, when viewed as a whole, "fairly and accurately describe [state] tort law").

Vlad contends that the instruction was prejudicial because the defense presented no evidence under which the jury could have found him liable, which must mean that the jury found him liable because of his failure to look. If that were true, the instruction might have been prejudicial. But that is not the case here. The jury was faced with two different accounts of what happened during the crash—ironically, both accounts coming from Vlad himself—and had to decide which one to believe. In one account, Vlad would be at least partially liable because he failed to maintain an assured clear distance. The jury's decision to split liability is likely an indicator that it believed Vlad's police report account over his story at trial. Because Vlad never requested jury interrogatories, he can do no more than speculate as to the theory of the case the jury believed. Without some actual indication that the jury found him negligent because of a supposed "duty to look," we hold that Vlad has not shown prejudice. Rather, the instructions as a whole fairly and adequately submitted the relevant law to the jury. Therefore, he has not shown that the instructions as a whole prejudiced him, and his claim must fail.

### III.

For the foregoing reasons, we AFFIRM the judgment of the district court.

**KAREN NELSON MOORE, Circuit Judge, dissenting.** There is no dispute that Vlad had the right of way, or that he enjoyed a privileged status as the right-of-way driver; Ohio has relieved right-of-way drivers of the common-law duty of care. *See Morris v. Bloomgren*, 187 N.E. 2, 4 (Ohio 1933); *see also Deming v. Osinski*, 265 N.E.2d 554, 555–56 (Ohio 1970) (reaffirming the holding in *Morris*). A right-of-way driver loses his privilege, however, if he drives unlawfully. *Morris*, 187 N.E. at 5. Vlad concedes that had he violated the assured-clear-distance statute, Ohio Rev. Code § 4511.21, then he would not be entitled to his right-of-way privilege. *See* Appellant Reply Br. at 5; *Self v. Keeney Trucking, Inc.*, No. 95-L-027, 1995 WL 815361, at *3 (Ohio Ct. App. Dec. 29, 1995) ("For [the right-of-way driver] to have been proceeding in a lawful manner, he must have been obeying the rules of the road, including the assured-clear-distance statute."). Vlad's contention is that the district court permitted the jury to consider two theories of how Vlad lost his privilege as a right-of-way driver: (1) that Scott's truck was "reasonably discernible," and Vlad failed to maintain an assured clear distance; or (2) that Vlad failed to look. Vlad challenges whether it was appropriate to submit the second theory to the jury.

The Majority overlooks the confusing aspects of the district court's instructions, which leave room for the jury to find that Vlad was driving unlawfully because he violated the duty to look—a duty he did not owe. This is not a case about whether a right-of-way driver who has lost his privilege by speeding, for example, acquires a duty to look that he did not have before he sped. He does. *See Holding v. Chappel*, 535 N.E.2d 350, 352 (Ohio Ct. App. 1987) ("Only after it has been found that the vehicle is not proceeding in a lawful manner, by violating a law or ordinance, does the consideration of the driver's common-law duty to use ordinary care come

into play."). Rather, it is about whether a right-of-way driver loses his privilege by failing to look. And the Ohio courts have been consistent and clear that he does not.

In *Deming*, the Ohio Supreme Court considered the propriety of a contributory-negligence instruction when the plaintiff had the right of way and had not violated any other traffic law. 265 N.E.2d at 555. The plaintiff was traveling in the westbound lane at the speed limit, approaching an intersection, and noticed the defendant approaching the intersection from the west in the left-turn lane. *Id.* at 554. The plaintiff glanced away from the intersection towards an acquaintance at a gas station, and, when he returned his gaze to the intersection, the defendant's car was twenty or thirty feet away and turning left. *Id.* at 554–55. The plaintiff did not have enough time to adjust, and the cars collided. *Id.* at 555. The trial court instructed the jury on contributory negligence and denied the plaintiff's post-verdict motion for judgment or a new trial. *Id.* The trial judge gave the following reason for denying the plaintiff's motion:

> Ordinarily one need not look for danger unless there is the reason to expect it. Plaintiff was entering a large, moderately-heavy-traffic intersection. Defendant had her signal lights on and was in the turning lane. Plaintiff is required to look, look effectively and continue to look and otherwise remain alert. This is particularly so when defendant's intention to turn was unmistakable. If he did not do so, he could be held contributorily negligent.

*Id.* The Ohio Supreme Court held that the trial court's reasoning was erroneous because the "requirement that [the] plaintiff 'look, look effectively and continue to look and otherwise remain alert' completely ignore[d]" the holding of *Morris* because there was no other evidence that the plaintiff was driving unlawfully. *Id.* (citing *Morris*, 187 N.E. at 2). Thus, under *Deming*, it is error to instruct the jury that a person drives unlawfully if he fails to "look, look effectively and continue to look and otherwise remain alert."

Ohio Courts of Appeals have consistently adhered to this holding. In *Holding*, the Ohio Court of Appeals held that a right-of-way driver does not travel "unlawfully" by "failing to use ordinary care." 535 N.E.2d at 352. In *Wallace v. Hipp*, the Ohio Court of Appeals interpreted *Deming* to mean that "a driver need not look for pedestrians or vehicles violating his right of way." No. L-11-1052, 2012 WL 525530, at *3 (Ohio Ct. App. Feb. 17, 2012). The court noted, however, that "the operator of a motor vehicle must exercise due care to avoid colliding with a pedestrian [or other vehicle] in his right of way *only upon discovering a dangerous or perilous situation*," and emphasized that "a driver has no duty to look for danger unless there is reason to expect it." *Id.* (emphasis in original).

In *Anderson v. Schmidt*, the Ohio Court of Appeals reiterated that "[w]hether or not the individual with the right of way exercised his common-law duty of ordinary care is not a consideration in determining whether that individual was proceeding in a lawful manner." No. 99084, 2013 WL 4239308, at *6 (Ohio Ct. App. Aug. 15, 2013) (internal alterations omitted) (quoting *Holding*, 252 N.E.2d at 352). The duty of ordinary care "only arises . . . after the other driver or pedestrian has failed to yield and after the individual with the right of way has realized that there is a clearly dangerous condition in the right of way." *Id.* (internal brackets omitted). The *Anderson* court concluded that the duty-to-look instruction was "err[or] as a matter of law" because it "erroneously failed to convey to the jury that a pedestrian with the statutory right-of-way is not required to continuously look for drivers violating the right-of-way." *Id.* at *8. It is therefore abundantly clear that, under Ohio law, a right-of-way driver does not lose his privileged status by failing to look and that the district court erroneously submitted the instruction to the jury.

Not only did the district court err by submitting the duty-to-look instruction, but also the instruction was prejudicial. The duty-to-look instruction implied that Vlad had a duty to keep an eye out for merging cars or trucks, in addition to his duty to maintain an assured clear distance. Scott's attorney used this instruction to argue that Vlad was negligent because he was not paying attention:

> He then goes on to say this very important thing, the instruction. To be entitled to keep the right-of-way, a driver with the right-of-way, Mr. Vlad, must drive in a lawful manner. And if he's not watching what's ahead of him, remember the duty to look that The Judge talked about, he had a duty to look in front, you've got a duty to look what's ahead of you. I mean, you can't assume that nothing's going to run across my lane, a deer or anything. You just can't assume that that's the case. You've got a duty to look. If the driver does not do so, Mr. Vlad, the driver may lose the right-of-way of the approaching vehicle, the vehicle he was actually approaching.

R. 56 at 96–97 (Trial Tr. 4/9/13) (Page ID #566–67). Scott's attorney continued, "But if you follow the facts of this case that are more credible, there's only one conclusion here. And that conclusion is strictly that Mr. Vlad just wasn't paying attention." *Id.* at 97 (Page ID #567). "Inattention" became a consistent theme in the closing argument: "Mr. Vlad's inattention is what caused the accident. Simple. Direct. 100 percent his fault." *Id.* at 99 (Page ID #569). Finally, Scott's attorney concluded his arguments by emphasizing Vlad's alleged failure to pay attention: "I don't see any evidence that tells me that Kalvin Scott is more negligent than Viorel Vlad who had the whole thing laid out right in front of him and didn't pay attention. I ask you to return a verdict rightly for the defendants in the case." *Id.* at 104 (Page ID #574).

To my mind, the duty-to-look instruction permitted this line of argument—that even though Vlad enjoyed a privileged status, he could lose that status by failing to look out for trucks merging into his lane from the berm. And that argument is improper under Ohio law. Although I believe there was sufficient evidence to find that Vlad had violated the assured-clear-distance

statute, the jury's verdict may have been based simply on the jury's conclusion that Vlad lost his privileged status by failing to look.  Thus, the instructional error was harmful, and therefore I dissent.