ALICE M. BATCHELDER, Circuit Judge.
This diversity case arises from a crash between two tractor-trailers on the Ohio Turnpike on May 4, 2011. After a trial, a federal jury found plaintiff Viorel Vlad and defendants Kalvin Scott, Jr. and his employer, P.A.M. Transport (“PAM”), equally liable. Vlad now contends that the district court erred by including a jury instruction on the “duty to look.” Because, when viewing them as a whole, we do not find the jury instructions to be confusing, misleading, and prejudicial, we AFFIRM the district court’s judgment.
I.
Shortly after midnight on May 4, 2011, Kalvin Scott, Jr., a truck driver for PAM, pulled off onto the side of the Ohio Turnpike for a brief respite. After a short time, he started up his truck and attempted to re-enter the highway. He checked his mirrors as he attempted to re-enter but did not see any traffic in the right lane. He did, however, notice trucks moving over to the left lane to let him merge. As he merged onto the highway, he was travelling at a speed of at least thirty-five, but no more than forty-five, miles-per-hour.
Meanwhile, Viorel Vlad was driving his truck in the right lane of the Ohio Turnpike at just under the posted speed limit of seventy miles-per-hour. Vlad gave two different accounts as to what happened that night: one in a police report the day of the accident and one at trial. In the police report, he stated that he was driving in the right lane when he noticed a truck on the right shoulder. As the truck started to pull out into the right lane, Vlad began to brake. When he was 300 feet away from the truck, however, he noticed that it was going “really slow.” Because there were trucks in the left lane, he could not move over to let the other truck into ■the right lane. Due to his inability to move, he crashed into the merging truck.
At trial, however, Vlad testified that he noticed Scott’s truck on the side of the road because he saw other ears’ headlights reflecting off of it. He believed the truck was “broken down or something like that.” At that point, he checked his mirrors and attempted to move over to the left lane to give this truck space, but there were trucks in the left lane that would not let him over. He did not see Scott’s truck again until he ran into it, because Scott just drove out in front of him.
Regardless of how it happened, Vlad’s truck rear-ended Scott’s truck. This collision caused substantial damage to Vlad’s truck, and also caused Vlad significant injuries and loss of work. Invoking diversity jurisdiction, Vlad filed a complaint in federal district court against Scott and PAM for medical expenses and pain-and-suffering damages. Vlad contended that Scott negligently entered the highway into Vlad’s right-of-way. Scott, on the other hand, raised the affirmative defense that Vlad was negligent in failing to maintain an assured clear distance between the two trucks.
The district court instructed the jury on many points of law, including the definitions of right-of-way and assured clear distance. It also included a jury instruction on the duty to look: “Failure to see that which a reasonably careful person under like circumstances would have seen is negligence. A driver is negligent when he does not continue to look, if, under the circumstances, a reasonably careful person would have continued to look.” After hearing the jury instructions and considering the evidence, the jury returned a ver- *511 diet finding Vlad and Scott equally negligent. Because of this verdict, the district court entered a judgment awarding Vlad half of the $256,000 in damages the jury had found.
Vlad timely appealed, challenging the “duty to look” instruction as erroneous.
II.
“Because the correctness of jury instructions ,is a question of law, we review de novo a district court’s jury instructions.” Jones v. Federated Fin. Reserve Corp., 144 F.3d 961, 966 (6th Cir.1998). Although Vlad is challenging only one particular instruction, “[w]e cannot look at only certain parts of the instructions ‘in isolation; we must consider the charge as a whole.’” Miami Valley Fair Hous. Ctr., Inc. v. Connor Grp., 725 F.3d 571, 579 (6th Cir.2013) (quoting United States v. Prince, 214 F.3d 740, 760-61 (6th Cir.2000)). “The standard on appeal for a court’s charge to the jury is whether the charge, taken as a whole, fairly and adequately submits the issues and applicable law to the jury.” Fisher v. Ford Motor Co., 224 F.3d 570, 575-76 (6th Cir.2000) (internal quotation marks omitted). “We will reverse a jury’s verdict on the basis of improper instructions only when the instructions, when viewed as a whole, are confusing, misleading, and prejudicial.” Barnes v. Owens-Corning Fiberglas Corp., 201 F.3d 815, 822 (6th Cir.2000). We have interpreted this standard as requiring “both an error in jury instructions and resulting prejudice before reversal is justified.” Roberts v. Galen of Va., Inc., 325 F.3d 776, 787 n. 3 (6th Cir.2003).
Because this is a diversity case, “federal law governs our standard of review for determining whether a jury instruction is prejudicial.” Gafford v. Gen. Elec. Co., 997 F.2d 150, 166 (6th Cir.1993) (internal quotation marks and citations omitted). State law, however, determines the substance of the jury instructions. Persian Galleries, Inc. v. Transcon. Ins. Co., 38 F.3d 253, 257 (6th Cir.1994). “In diversity cases such as this, we apply state law in accordance with the controlling decisions of the state supreme court.” Allstate Ins. Co. v. Thrifty Rent-A-Car Sys., Inc., 249 F.3d 450, 454 (6th Cir.2001).
Turning first to the question of whether this jury instruction was erroneous, Vlad argues that Ohio case law uniformly rejects the inclusion of a “duty to look” instruction applicable to the right-of-way driver. Ohio law defines “right-of-way” as “[t]he right of a vehicle ... to proceed uninterruptedly in a lawful manner in the direction in which it ... is moving in preference to another vehicle ... approaching from a different direction into its ... path.” Ohio Rev. Code Ann. § 4511.01(UU)(1). In Morris v. Bloomgren, the Ohio Supreme Court held that this statute confers “an absolute right of way upon the motor vehicle approaching from the right, qualified only by the requirement that, in proceeding uninterruptedly in the direction in which it is moving, it must proceed in a lawful manner.” 127 Ohio St. 147, 187 N.E. 2, 5 (1933) (emphasis omitted).
To bolster his point, Vlad heavily relies on an application of Morris in the Ohio Supreme Court case Deming v. Osinski, 24 Ohio St.2d 179, 265 N.E.2d 554 (1970). In that case, a lower court had given an instruction that a plaintiff with the right-of-way must “look, look effectively and continue to look and otherwise remain alert.” Id. at 555. The court held that this instruction “completely ignores our decision in Morris.” Id. Such an instruction, “by denying the vehicle approaching from the right its statutory privilege of proceeding uninterruptedly if it proceeds in a lawful manner, and by placing the *512 drivers of both vehicles upon an equal plane in approaching an intersection and relegating both to the rules of care existing at common law,” entirely ignores “the preferential status of the vehicle approaching from the right and the servient status of the other vehicle.” Id. at 556.
In Deming, however, there was “nothing in the record to indicate that ... [plaintiff] acted in an unlawful manner.” Id. This is significant because a driver can lose the right-of-way by driving in an unlawful manner, such as by violating a traffic statute. One of these traffic statutes is the assured-clear-distance law. That ordinance provides that “[n]o person shall drive any motor vehicle ... at a greater speed than will permit the person to bring it to a stop within the assured clear distance ahead.” Ohio Rev.Code Ann. § 4511.21(A). In our case, then, as opposed to Deming, there is evidence in the record indicating that Vlad may have been driving in an unlawful manner. If the jury believed Vlad’s story given in the police report, then Vlad may have violated the assured-clear-distance statute by failing to maintain enough distance to avoid a collision between his truck and a truck he saw 300 feet away. This case, therefore, is not Deming.
In fact, Deming specifically juxtaposes its situation with a situation in which a vehicle is “proceeding in violation of a law or ordinance.” Deming, 265 N.E.2d at 556. In that context, “such vehicle loses its preferential status and the relative obligations of the drivers of the converging vehicles are governed by the rule of the common law.” Id. Deming thus differentiates between drivers with the right-of-way and drivers that have lost the right-of-way because they violated a statute.
Under one of Vlad’s version of the facts, Vlad would have maintained the right-of-way until the moment of the crash', and under the other version, Vlad would have lost the right-of-way by violating the assured-clear-distance statute. Deming tells us that the “duty to look” instruction would be improper in the former context, but says nothing about the latter context. Further, Vlad has not pointed us to any Ohio case law holding that the “duty to look” instruction would be erroneous in a situation where the evidence about the right-of-way driver’s lawfulness is mixed. And the instruction is surely not per se erroneous, because it mirrors the Ohio pattern instruction on the “duty to look” almost exactly. See 1 OJI-CV 401.05. Vlad has thus given us no reason to believe that, apart from the situation described in Deming in which the right-of-way driver’s conduct is unimpeachable, the Ohio Supreme Court would find erroneous an instruction that comports with one of its pattern instructions.
Even if the instruction were erroneous, however, it is certainly not prejudicial when considered in the context of the charge as a whole. The district court instructed the jury on the elements of negligence, the assured-clear-distance statute, the right-of-way, and the duty of ordinary care — all instructions that Vlad has not appealed. In this context, an error in one provision of the jury instructions would not rise to a prejudicial level. See, e.g., Bach v. Ucho, 697 F.2d 741, 743 (6th Cir.1983) (rejecting a challenge to jury instructions because the instructions, when viewed as a whole, “fairly and accurately describe [state] tort law”).
Vlad contends that the instruction was prejudicial because the defense presented no evidence under which the jury could have found him liable, which must mean that the jury found him liable because of his failure to look. If that were true, the instruction might have been prejudicial. But that is not the case here. The jury *513 was faced with two different accounts of what happened during the crash — ironically, both accounts coming- from Vlad himself — and had to decide which one to believe. In one account, Vlad would be at least partially liable because he failed to maintain an assured clear distance. The jury’s decision to split liability is likely an indicator that it believed Vlad’s police report account over his story at trial. Because Vlad never requested jury interrogatories, he can do no more than speculate as to the theory of the case the jury believed. Without some actual indication that the jury found him negligent because of a supposed “duty to look,” we hold that Vlad has not shown prejudice. Rather, the instructions as a whole fairly and adequately submitted the relevant law to the jury. Therefore, he has not shown that the instructions as a whole prejudiced him, and his claim must fail.
III.
For the foregoing reasons, we AFFIRM the judgment of the district court.