KAREN NELSON MOORE, Circuit Judge,
dissenting.
There is no dispute that Vlad had the right of way, or that he enjoyed a privileged status as the right-of-way driver; Ohio has relieved right-of-way drivers of the common-law duty of care. See Morris v. Bloomgren, 127 Ohio St. 147, 187 N.E. 2, 4 (1933); see also Deming v. Osinski, 24 Ohio St.2d 179, 265 N.E.2d 554, 555-56 (1970) (reaffirming the holding in Morris). A right-of-way driver loses his privilege, however, if he drives unlawfully. Morris, 187 N.E. at 5. Vlad concedes that had he violated the assured-clear-distance statute, Ohio Rev.Code § 4511.21, then he would not be entitled to his right-of-way privilege. . See Appellant Reply Br. at 5; Self v. Keeney Trucking, Inc., No. 95-L-027, 1995 WL 815361, at *3 (Ohio Ct.App. Dec. 29, 1995) (“For [the right-of-way driver] to have been proceeding in a lawful manner, he must have been obeying the rules of the road, including the assured-clear-distance statute.”). Vlad’s contention is that the district court permitted the jury to consider two theories of how Vlad lost his privilege as a right-of-way driver: (1) that Scott’s truck was “reasonably discernible,” and Vlad failed to maintain an assured clear distance; or (2) that Vlad failed to look. Vlad challenges whether it was appropriate to submit the second theory to the jury.
The Majority overlooks the confusing aspects of the district court’s instructions, which leave room for the jury to find that Vlad was driving unlawfully because he violated the duty to look — a duty he did not owe. This is not a case about whether a right-of-way driver who has lost his privilege by speeding, for example, acquires a duty to look that he did not have before he sped. He does. See Holding v. Chappel, 41 Ohio App.3d 250, 535 N.E.2d 350, 352 (1987) (“Only after it has been found that the vehicle is not proceeding in a lawful manner, by violating a law or ordinance, does the consideration of the driver’s common-law duty to use ordinary care come into play.”). Rather, it is about whether a right-of-way driver loses his privilege by failing to look. And the Ohio courts have been consistent and clear that he does not.
In Deming, the Ohio Supreme Court considered the propriety of a contributory-negligence instruction when the plaintiff had the right of way and had not violated any other traffic law. 265 N.E.2d at 555. The plaintiff was traveling in the westbound lane at the speed limit, approaching an intersection, and noticed the defendant approaching the intersection from the west in the left-turn lane. Id. at 554. The plaintiff glanced away from the intersec *514 tion towards an acquaintance at a gas station, and, when he returned his gaze to the intersection, the defendant’s car was twenty or thirty feet away and turning left. Id. at 554-55. The plaintiff did not have enough time to adjust, and the cars collided. Id. at 555. The trial court instructed the jury on contributory negligence and denied the plaintiffs post-verdict motion for judgment or a new trial. Id. The trial judge gave the following reason for denying the plaintiffs motion:
Ordinarily one need not look for danger unless there is the reason to expect it. Plaintiff was entering a large, moderately-heavy-traffic intersection. Defendant had her signal lights on and was in the turning lane. Plaintiff is required to look, look effectively and continue to look and otherwise remain alert. This is particularly so when defendant’s intention to turn was unmistakable. If he did not do so, he could be held contributorily negligent.
Id. The Ohio Supreme Court held that the trial court’s reasoning was erroneous because the “requirement that [the] plaintiff •‘look, look effectively and continue to look and otherwise remain alert’ completely ignore[d]” the holding of Moms because there was no other evidence that the plaintiff was driving unlawfully. Id. (citing Morris, 187 N.E. at 2). Thus, under Denting, it is error to instruct the jury that a person drives unlawfully if he fails to “look, look effectively and continue to look and otherwise remain alert.”
Ohio Courts of Appeals have consistently adhered to this holding. In Holding, the Ohio Court of Appeals held that a right-of-way driver does not travel “unlawfully” by “failing to use ordinary care.” 535 N.E.2d at 352. In Wallace v. Hipp, the Ohio Court of Appeals interpreted Doming to mean that “a driver need not look for pedestrians or vehicles violating his right of way.” No. L-11-1052, 2012 WL 525580, at *3 (Ohio Ct.App. Feb. 17, 2012). The court noted, however, that “the operator of a motor vehicle must exercise due care to avoid colliding with a pedestrian [or other vehicle] in his right of way only upon discovering a dangerous or perilous situation,” and emphasized that “a driver has no duty to look for danger unless there is reason to expect it.” Id. (emphasis in original).
In Anderson v. Schmidt, the Ohio Court of Appeals reiterated that “[w]hether or not the individual with the right of way exercised his common-law duty of ordinary care is not a consideration in determining whether that individual was proceeding in a lawful manner.” No. 99084, 2013 WL 4239308, at *6 (Ohio Ct.App. Aug. 15, 2013) (internal alterations omitted) (quoting Holding, 535 N.E.2d at 352). The duty of ordinary care “only arises ... after the other driver or pedestrian has failed to yield and after the individual with the right of way has realized that there is a clearly dangerous condition in the right of way.” Id. (internal brackets omitted). The Anderson court concluded that the duty-to-look instruction was “err[or] as a matter of law” because it “erroneously failed to convey to the jury that a pedestrian with the statutory right-of-way is not required to continuously look for drivers violating the right-of-way.” Id. at *8. It is therefore abundantly clear that, under Ohio law, a right-of-way driver does not lose his privileged status by failing to look and that the district court erroneously submitted the instruction to the jury.
Not only did the district court err by submitting the duty-to-look instruction, but also the instruction was prejudicial. The duty-to-look instruction implied that Vlad had a duty to keep an eye out for merging cars or trucks, in addition to his duty to maintain an assured clear distance. *515 Scott’s attorney used this instruction to argue that Vlad was negligent because he was not paying attention:
He then goes on to say this very important thing, the instruction. To be entitled to keep the right-of-way, a driver with the right-of-way, Mr. Vlad, must drive in a lawful manner. And if he’s not watching what’s ahead of him, remember the duty to look that The Judge talked about, he had a duty to look in front, you’ve got a duty to look what’s ahead of you. I mean, you can’t assume that nothing’s going to run across my lane, a deer or anything. You just can’t assume that that’s the case. You’ve got a duty to look. If the driver does not do so, Mr. Vlad, the driver may lose the right-of-way of the approaching vehicle, the vehicle he was actually approaching.
R. 56 at 96-97 (Trial Tr. 4/9/13) (Page ID # 566-67). Scott’s attorney continued, “But if you follow the facts of this case that are more credible, there’s only one conclusion here. And that conclusion is strictly that Mr. Vlad just wasn’t paying attention.” Id. at 97 (Page ID # 567). “Inattention” became a consistent theme in the closing argument: “Mr. Vlad’s inattention is what caused the accident. Simple. Direct. 100 percent his fault.” Id. at 99 (Page ID # 569). Finally, Scott’s attorney concluded his arguments by emphasizing Vlad’s alleged failure to pay attention: “I don’t see any evidence that tells me that Kalvin Scott is more negligent than Viorel Vlad who had the whole thing laid out right in front of him and didn’t pay attention. I ask you to return a verdict rightly for the defendants in the case.” Id. at 104 (Page ID # 574).
To my mind, the duty-to-look instruction permitted this line of argument — that even though Vlad enjoyed a privileged status, he could lose that status by failing to look out for trucks merging into his lane from the berm. And that argument is improper under Ohio law. Although I believe there was sufficient evidence to find that Vlad had violated the assured-clear-distance statute, the jury’s verdict may have been based simply on the jury’s conclusion that Vlad lost his privileged status by failing to look. Thus, the instructional error was harmful, and therefore I dissent.